# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME I. ESTRADA, | Case No. 1:14-cv-00679-DAD-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION RECOMMENDING EVIDENTIARY HEARING ON FIRST CLAIM FOR RELIEF AND DENIAL OF REMAINING CLAIMS OF PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| MARTIN BITER, | |
| Respondent. | |

Petitioner Jaime I. Estrada is a state prisoner, represented by appointed counsel, proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition for writ of habeas corpus, Petitioner raises the following claims for relief: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; and (3) actual innocence.

For the reasons discussed herein, the undersigned recommends an evidentiary hearing on Petitioner's first claim for relief and denial of the petition for writ of habeas corpus on the remaining claims.

**I.**

**BACKGROUND**

On August 29, 1995, Petitioner was convicted by a jury in the Stanislaus County Superior Court of second-degree murder (count 1) and carjacking (counts 2 and 3). The jury found true the allegation that Petitioner personally used a firearm in the commission of each crime. (1 CT[1]

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on May 20, 2015. (ECF No. 34).

288–90). Petitioner was sentenced to a determinate term of twenty-five years and four months[2] to be followed by an indeterminate term of twenty-five years to life. (LD[3] 1). Petitioner's sentence was to be served consecutively to any prior uncompleted sentence.[4] (Id.). On November 7, 1997, the California Court of Appeal, Fifth Appellate District vacated the sentence and remanded for resentencing, but affirmed the judgment in all other respects. (LD 2 at 17). On January 21, 1998, the California Supreme Court denied Petitioner's petition for review. (LDs 3, 4). On April 3, 1998, Petitioner was resentenced to a determinate term of twenty-five years and eight months[5] to be followed by an indeterminate term of twenty years to life. (LD 5).

On April 28, 2013, Petitioner filed a state petition for writ of habeas corpus that raised federal constitutional issues, and subsequently filed five[6] additional state habeas corpus petitions, which were denied. (LDs 7–20). On April 17, 2014,[7] Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). The Court denied Respondent's motion to dismiss the petition as untimely, finding that Petitioner received newly discovered information from the District Attorney as part of an informal response during a state habeas proceeding sometime after June 21, 2013. (ECF Nos. 20, 29). Respondent has filed an answer to the petition. (ECF No. 33). Petitioner has filed a traverse and supplemental traverse. (ECF Nos. 35, 46).

///
///
///
///

---

[2] The determinate term also included three years for two assault offenses that occurred while Petitioner was incarcerated.

[3] "LD" refers to the documents lodged by Respondent on September 19, 2014 and May 20, 2015. (ECF No. 34).

[4] At the time, Petitioner was serving a state prison sentence for a Merced County case. (LD 2 at 15).

[5] This determinate term included three years for the two assault offenses in addition to four years and eight months for the Merced County case.

[6] The Court notes that although Respondent labeled Lodged Document No. 9 as a petition for writ of habeas corpus, the document is an informal reply regarding the petition, dated April 28, 2013, filed in the Stanislaus County Superior Court.

[7] Pursuant to the mailbox rule, a *pro se* prisoner's habeas petition is filed "at the time . . . [it is] delivered . . . to the prison authorities for forwarding to the court clerk." Hernandez v. Spearman, 764 F.3d 1071, 1074 (9th Cir. 2014) (alteration in original) (internal quotation marks omitted) (quoting Houston v. Lack, 487 U.S. 266, 276 (1988)). See also Rule 3(d), Rules Governing Section 2254 Cases. Here, although the petition bears a file stamp date of May 8, 2014, Petitioner has submitted a proof of service by mail for the petition showing he mailed it on April 17, 2014. (ECF No. 1 at 99). Therefore, the Court considers the petition filed on April 17, 2014.

## II.

## STATEMENT OF FACTS[8]

PEOPLE'S CASE IN CHIEF

The Badie Carjacking (Count Three)

On October 19, 1993, at midday, Martin Badie drove his Dodge Spirit to a Bible bookstore in Modesto where he dropped off his wife. He then parked his car in the adjacent lot. As he sat in his car Badie heard a voice say, "Get out of the car." Badie turned and saw a man, whom Badie would later identify as appellant, pointing a pistol at him. The pistol was approximately two feet from Badie's face. Though he could not tell if the gun was real, Badie immediately stepped out of the car when appellant threatened to "blow [his] brains out."

The Evans Carjacking (Count Two)

At approximately noon on March 2, 1994, John Evans approached his company-owned Ford pickup truck in the parking lot of a Quik Stop Market in Modesto. As Evans unlocked the door to the pickup, he heard the sound of someone working the slide of a handgun. Evan turned in the direction of the sound and saw a man, whom Evans later identified as appellant, standing nearby. Appellant held what appeared to be an automatic pistol and told Evans "'Give me your keys, and get the fuck out of here.'" Evans did as appellant demanded. A month later, Evans learned the highway patrol had recovered the pickup, which had been stripped.

The Emigdio Murder (Count One)

On the evening of March 20, 1994, Pedro Emigdio came to the Soderquist Apartments in Turlock to visit Miguel Toscano. Toscano was away from the apartment four-plex until 1:30 a.m., at which point he came home and found Emigdio drunk. The two men went out in Emigdio's car to purchase a 12-pack of beer. At the start of the return trip to the apartments, Emigdio retrieved a .22 rifle from the trunk of his car. He placed the weapon on the seat between himself and Toscano. When the two arrived back at the apartments, Emigdio put the rifle back in the trunk of the car. The two men then sat on a stairway outside Toscano's apartment while they drank beer and listened to music.

Meanwhile, appellant attended a party hosted by Maria Villa in her apartment, located downstairs from Toscano's unit. Appellant and others left the party for two or three hours. They returned sometime before midnight, claiming to have carjacked and stripped a truck. Appellant had a gun with him.

At around 2 a.m., Toscano and Emigdio joined the party in Villa's apartment. After a few minutes, Toscano realized Emigdio was gone. Then three shots, all with the same sound, rang out, one after another. Villa and Toscano ran outside and found Emigdio laying face down on the ground in the parking lot. Villa also saw appellant's pickup truck leaving the scene.

A 14-year-old boy was awakened by the gunshots and looked out his apartment window. He saw the victim lying on the ground and appellant with a .38 caliber or

---

[8] The Court relies on the California Court of Appeal's November 7, 1997 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

3

nine-millimeter gun in his hand. Appellant, who was approximately 10 feet away from the victim's body, ran to a truck, got in and drove away in a hurry. Only five or ten seconds elapsed from the time the teenager heard the shots to the time he saw appellant with the gun in his hand. The witness also reported seeing another young man run away from the scene.

Emigdio had been shot twice. A medium caliber bullet consistent with a nine millimeter weapon killed Emigdio as it passed through his body. According to the pathologist who examined Emigdio, the killer stood more than two feet in front and to the left of Emigdio when he shot the victim. Emigdio had a blood alcohol level of .25 when he died.

Investigators discovered two nine-millimeter shell casings on the right side of the victim's car. There was also a .38 caliber or nine-millimeter slug embedded in the side of the victim's car.

Next to Emigdio's body was his .22 caliber rifle. It was a single shot type; its bolt action was in the open position. The rear end of a .22 bullet with a damaged casing was sticking out of the chamber. Officers found two live .22 rounds near Emigdio. They did not find any .22 caliber shell casings in the area. The medical examiner found 10 .22-caliber shells in Emigdio's right front pocket.

On March 22, 1994, appellant was arrested when he attempted to flee from an orchard in which a vehicle was being stripped. Badie's Dodge Spirit was recovered during this incident. The license plate on the Dodge belonged to another vehicle. The vehicle identification number had been removed. A business card belonging to Evans, the victim in the March 2nd carjacking, was found in the Badie vehicle.

During an interview with a sheriff's deputy, appellant had claimed that two other men, one of whom was driving the Badie vehicle, picked him up earlier in the day. The three then went to the orchard where they stripped a pickup truck appellant had stolen at gunpoint two nights earlier. Appellant had used his nine-millimeter pistol in this carjacking. Appellant described returning to the Villa party after the carjacking. He also claimed he had since sold the handgun and did not know its whereabouts.

Shortly after his arrest, appellant telephoned Villa from jail. According to Villa's recollection of the conversation, appellant reported shooting Emigdio in self-defense. Emigdio purportedly fired first and it was only then that appellant returned fire. Appellant told Villa that Emigdio had come downstairs to Villa's party "a couple of times pointing a gun at him and his other friend," and that appellant had told someone else at Villa's party to have Toscano come and take his friend upstairs "because [appellant] was going to have some problems with him."

During a subsequent search of appellant's residence, officers discovered ammunition in a dresser drawer. It was the same brand and caliber as the casings found at the homicide scene.

### DEFENSE

Badie twice failed to identify appellant as the carjacker, once at a live line-up more than a year after the crime and a second time when a defense investigator showed him a photographic line-up. In its cross-examination of Toscano, the

4

defense brought out that Toscano knew Emigdio had a quick temper and tended to anger easily when he was drunk.

(LD 2 at 2–5).

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Stanislaus County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, the "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

5

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

The AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 133 S. Ct. 1088, 1094 n.1 (2013); Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## REVIEW OF CLAIMS

**A. Ineffective Assistance of Counsel**

1. Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance

is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within the "wide range" of reasonable professional assistance. Id. at 687. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 134 S. Ct. 10, 13 (2013)). When this "doubly deferential" judicial review applies, the appropriate inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

2. Failure to Communicate Nineteen-Year Plea Offer

In his first claim for relief, Petitioner asserts that trial counsel was ineffective for failing to communicate a nineteen-year plea offer that Petitioner claims he would have accepted. (ECF No. 1 at 5, 10–11, 17–20). Respondent argues that the state court's denial of the ineffective assistance of counsel claim was reasonable because Petitioner did not present evidence that there was a nineteen-year deal. (ECF No. 33 at 7).

### a. Applicable Procedural History

In the state habeas petition, dated April 28, 2013, filed in the Stanislaus County Superior Court, Petitioner raised an ineffective assistance claim with respect to his first appointed counsel's[9] failure to advise Petitioner to accept an eight-year plea offer. (LD 7). The superior court ordered the State to file an informal response[10] to the petition. (LD 8). In its informal response, the State included internal memoranda and other documents regarding possible plea offers in addition to a declaration of Sandra Bishop, the deputy district attorney ("DDA") assigned to Petitioner's case, stating that the DDA who appeared at the August 17, 1995 pretrial conference "may have had discussion about settling the case for 19 years, to include a lesser included offense of voluntary manslaughter and one carjacking both with Penal Code § 12022.5 enhancements and dismissal of the second carjacking charge." (ECF No. 1 at 36; LD 9). Based on this additional evidence, in his informal reply, Petitioner requested to amend the petition to include an ineffective assistance claim with respect to trial counsel's failure to communicate the alleged nineteen-year offer. (LD 9 at 2). However, it appears that the superior court did not allow Petitioner to amend his petition to include this claim, and on August 21, 2013, the court denied Petitioner's ineffective assistance claim regarding the eight-year offer because there was "no evidence that an 8-year offer was made to Petitioner, or that counsel's performance in this case fell below the appropriate standards." (LD 10).

In a subsequent state habeas petition, dated September 30, 2013,[11] filed in the Stanislaus County Superior Court, Petitioner raised an ineffective assistance claim with respect to trial counsel's failure to communicate the alleged nineteen-year offer. (LD 13). On January 30, 2014, the Stanislaus County Superior Court denied this claim in a reasoned decision. (LD 14). Petitioner also raised this claim in a state habeas petition, dated January 10, 2014, in the

---

[9] Robert Wildman was Petitioner's first appointed counsel. Richard Palmer, now deceased, was Petitioner's second appointed counsel and represented Petitioner at trial. In the instant federal petition, Petitioner claims ineffective assistance against his second appointed counsel. (ECF No. 46 at 10 n.6, 11).

[10] When presented with a state habeas petition, a California court "must first determine whether the petition states a prima facie claim for relief . . . and also whether the stated claims are for any reason procedurally barred. To assist the court in determining the petition's sufficiency, the court may request an informal response from the petitioner's custodian or the real party in interest." People v. Romero, 8 Cal. 4th 728, 737 (1994).

[11] According to the document lodged by Respondent, the petition was dated September 7, 2013, and Petitioner subsequently submitted an addendum that was dated September 30, 2013. (LD 13).

California Supreme Court, which summarily denied the petition. (LDs 15, 16). As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the Stanislaus County Superior Court. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying Petitioner's ineffective assistance of counsel claim raised in the September 30, 2013 petition, the Stanislaus County Superior Court stated:

> Petitioner claims that he was denied effective assistance of counsel. According to Petitioner, counsel failed to properly advise Petitioner with respect to a pretrial offer to resolve his case for an 8-year sentence. Based on counsel's advice, Petitioner rejected the offer, went to trial and was ultimately sentenced to 15 years to life.
>
> Petitioner's petition is unsupported by any evidence. He fails to provide a declaration under penalty of perjury; the People, in their Informal Response, have set forth credible evidence to indicate that there never was an offer of 8 years made to Petitioner.
>
> Based on the record in this case, the court finds no evidence that an 8-year offer was made to Petitioner, or that counsel's performance in this case fell below the appropriate standards.

(LD 14).

### b. Applicable Standard of Review

When a state court's adjudication of a claim is based on an antecedent unreasonable application of federal law or unreasonable determination of fact, AEDPA deference no longer applies and the Court reviews the claim *de novo*. See Panetti v. Quarterman, 551 U.S. 930, 953 (2007); Liao v. Junious, 817 F.3d 678, 688 (9th Cir. 2016). In the state habeas petition, dated September 30, 2013, before the Stanislaus County Superior Court, Petitioner raised an ineffective assistance claim with respect to counsel's failure to communicate a nineteen-year plea offer. (LD 13). Yet in denying the claim, the Stanislaus County Superior Court's January 30, 2014 order stated that there was "no evidence that an *8-year* offer was made to Petitioner, or that counsel's performance in this case fell below the appropriate standards." (LD 14) (emphasis added). The superior court's rejection of Petitioner's claim restated verbatim its August 21, 2013 denial of Petitioner's previous petition, which had raised an ineffective assistance claim with respect to counsel's failure to advise Petitioner to accept an eight-year offer. (LD 10). However,

the September 30, 2013 petition did not raise any claim regarding an eight-year offer. Based on the foregoing, the Court finds that the superior court's adjudication of Petitioner's ineffective assistance claim regarding counsel's failure to communicate a nineteen-year plea offer was objectively unreasonable because the decision was based on finding no evidence that an eight-year offer was made. Accordingly, AEDPA deference no longer applies and the Court will review this claim *de novo*. See Panetti, 551 U.S. at 953; Liao, 817 F.3d at 688.

### c. Evidentiary Hearing

Petitioner contends that an evidentiary hearing is warranted on his ineffective assistance claim for trial counsel's failure to communicate a nineteen-year plea offer. (ECF No. 46 at 14–16). The AEDPA curtails a district court's discretion to hold evidentiary hearings for habeas petitioners who failed to develop the factual basis of a claim in state court proceedings. 28 U.S.C. § 2254(e)(2). A petitioner has not failed to develop the facts under § 2254(e)(2) "[i]f there has been no lack of diligence at the relevant stages of the state court proceedings." Williams, 529 U.S. at 437. Diligence requires a petitioner to seek an evidentiary hearing in state court in the manner prescribed by state law, and under California law, a court determines whether an evidentiary hearing is warranted only after the parties are ordered to file formal pleadings.[12] Horton v. Mayle, 408 F.3d 570, 582 n.6 (9th Cir. 2005) (citing People v. Duvall, 9 Cal. 4th 464 (1995); People v. Romero, 8 Cal. 4th 728 (1994)). In the instant case, both the Stanislaus County Superior Court and the California Supreme Court denied Petitioner's ineffective assistance of counsel claim without ordering formal pleadings. "Because [Petitioner] never reached the stage of the proceedings at which an evidentiary hearing should be requested, he has not shown 'a lack of diligence at the relevant stages of the state court proceedings' and therefore is not subject to AEDPA's restrictions on evidentiary hearings." Horton, 408 F.3d at 582 n.6.

Where, as here, the petitioner has not failed to develop the factual basis of his claim in state court as required by 28 U.S.C. § 2254(e)(2), "an evidentiary hearing is required if (1) the petitioner has shown his entitlement to an evidentiary hearing pursuant to Townsend v. Sain . . .

---

[12] Once a state court determines that a habeas corpus petition states a *prima facie* case on a claim that is not procedurally barred, the court is obligated to order formal pleadings. People v. Romero, 8 Cal. 4th 728, 737–40 (1994).

11

1 and (2) the allegations, if true, would entitle him to relief." Hurles v. Ryan, 752 F.3d 768, 791
2 (9th Cir. 2014) (citing Stanley v. Schriro, 598 F.3d 612, 624 (9th Cir. 2010)). Townsend held
3 that a federal court must grant an evidentiary hearing if:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Townsend v. Sain, 372 U.S. 293, 313 (1963), overruled on other grounds by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992). As Petitioner was not afforded an evidentiary hearing in state court, he is entitled to an evidentiary hearing on his ineffective assistance of counsel claim if his allegations, if true, would entitle him to relief.

The Supreme Court has applied the Strickland analysis to ineffective assistance claims arising from the plea process. See Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012); Hill v. Lockhart, 474 U.S. 52, 57 (1985). The Supreme Court has held that "as a general rule, defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and failure to do so constitutes deficient performance. Frye, 132 S. Ct. at 1408. To establish prejudice, a petitioner must demonstrate a reasonable probability that he would have accepted the plea offer and that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. Id. at 1409. That is, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Id.

In the instant petition, Petitioner declares under penalty of perjury that his trial counsel failed to communicate to Petitioner a nineteen-year plea offer. (ECF No. 1 at 5). Petitioner also provides DDA Bishop's declaration, which states that the DDA who appeared at the August 17, 1995 pretrial conference "may have had discussion about settling the case for 19 years, to include a lesser included offense of voluntary manslaughter and one carjacking both with Penal

12

Code § 12022.5 enhancements and dismissal of the second carjacking charge." (Id. at 36). This is consistent with a handwritten notation apparently made by the DDA who attended the pretrial conference and internal memoranda requesting and obtaining approval for such an offer. (Id. at 46, 48). In addition, it appears that Petitioner had previously indicated to counsel that he was willing to accept a plea in order to avoid a life sentence, as set forth in a settlement proposal letter from trial counsel to DDA Bishop. (Id. at 43). Therefore, Petitioner's allegations, if true, would entitle him to relief.

Based on the foregoing, the Court finds that Petitioner is entitled to an evidentiary hearing on his first claim for relief to determine whether the alleged nineteen-year plea offer was made and whether Petitioner's trial counsel failed to communicate said offer.

3. Conflict of Interest

In his fourth claim for relief, Petitioner asserts that his trial counsel was ineffective for actively representing conflicting interests by making a plea offer of fifty-eight years in order to remove Petitioner from the streets for a "very, very long time." (ECF No. 1 at 6, 14–15, 27–29). Respondent argues that this claim is procedurally barred and meritless. (ECF No. 33 at 12).

### a. Procedural Default

A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729–30 (1991). This doctrine of procedural default is based on the concerns of comity and federalism. Id. at 730–32. However, there are limitations as to when a federal court should invoke procedural default and refuse to review a claim because a petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). In determining whether a state procedural ruling bars federal review, the Court looks to the "last reasoned opinion on the claim." Ylst, 501 U.S. at 804.

Petitioner first raised this ineffective assistance claim with respect to trial counsel's conflict of interest in his state habeas petition, dated September 30, 2013, which was filed in the

1  Stanislaus County Superior Court. (LD 13). It appears the superior court denied relief on this
2  claim without explanation.[13] Thereafter, Petitioner filed a state habeas petition, dated January 10,
3  2014, in the California Supreme Court, but did not include this claim. (LD 15). Petitioner
4  eventually raised the conflict of interest claim in the California Supreme Court in a subsequent
5  petition dated May 23, 2014. (LD 19). The California Supreme Court denied the petition with
6  citation to In re Clark, 5 Cal. 4th 750, 767–69 (1993), and In re Miller, 17 Cal. 2d 734, 735
7  (1941). (LDs 19, 20). Clark discusses several procedural bars used by California courts, and the
8  pages cited here by the California Supreme Court refer to the bar on successive petitions. In
9  Miller, the court denied a successive petition setting forth the same grounds as a prior petition
10 because "no change in the facts or the law substantially affecting the rights of the petition has
11 been disclosed." 17 Cal. 2d at 735. As the California Supreme Court clearly and expressly stated
12 that its judgment rests on a state procedural ground, procedural default is appropriate if the
13 successiveness rule is independent and adequate.

14      To qualify as "independent," a state procedural ground "must not be 'interwoven with the
15 federal law.'" Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v.
16 Long, 463 U.S. 1032, 1040–41 (1983)). Previously, denials of California state habeas petitions
17 for procedural default were not independent of federal law. Park, 202 F.3d at 1152. However, in
18 In re Robbins, 18 Cal. 4th 770 (1998), the California Supreme Court adopted "a stance from
19 which it will now decline to consider federal law when deciding whether claims are procedurally
20 defaulted." Park, 202 F.3d at 1152. The Ninth Circuit subsequently held that the California
21 Supreme Court's post-Robbins denial of a state habeas petition based on the Clark untimeliness
22 rule was not interwoven with federal law and therefore constitutes an independent procedural
23 ground. Bennett v. Mueller, 322 F.3d 573, 582–83 (9th Cir. 2003). The logic of Bennett applies
24 equally to the procedural bar against successive petitions, and the Court finds that it is an
25 independent state procedural ground.

26
27 [13] On January 30, 2014, the Stanislaus County Superior Court denied Petitioner's other ineffective assistance of counsel claim regarding the nineteen-year plea offer in a reasoned decision. (LD 14). The order did not address the other claims raised in the petition, and Respondent has not lodged any other court order regarding the state habeas
28 petition dated September 30, 2013.

"To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" Walker v. Martin, 562 U.S. 307, 316 (2011) (quoting Beard v. Kindler, 558 U.S. 53, 60 (2009)). The Ninth Circuit has taken a burden-shifting approach to determining the adequacy of a state procedural ground. See Bennett, 322 F.3d at 586. First, the respondent must plead an independent and adequate state procedural bar as an affirmative defense. The burden then shifts to the petitioner "to place that defense in issue," and can be satisfied by "asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." Id. If the petitioner satisfies his burden, the burden shifts back to the respondent, which bears "the ultimate burden of proving the adequacy" of the state procedural bar. Id. at 585–86.

The California Supreme Court has stated that "Clark serves to notify habeas corpus litigants that we shall apply the successiveness rule when we are faced with a petitioner whose prior petition was filed after the date of finality of Clark." Robbins, 18 Cal. 4th at 788 n.9. Thus, the successiveness rule has been firmly established since at least when Clark was decided, and Clark put habeas petitioners on notice that the successiveness rule would be consistently applied. In the instant case, Petitioner has not raised any challenges to the adequacy of the procedural bar against successive petitions. Respondent has satisfied the burden of establishing that the successiveness rule is firmly established and regularly followed, and thus, it is an adequate state procedural ground. Based on the foregoing, the Court finds that the California Supreme Court in this case expressly invoked the procedural bar against successive petitions, which is an independent and adequate procedural ground. Therefore, Petitioner has procedurally defaulted his ineffective assistance claim regarding trial counsel's alleged conflict of interest.

A petitioner, however, may obtain federal review of a defaulted claim by demonstrating either "(1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" Jones v. Ryan, 691 F.3d 1093, 1101 (9th Cir. 2012) (quoting Coleman, 501 U.S. at 750). Petitioner argues that there is cause for the default because this ineffective assistance of counsel claim is based on newly discovered evidence. (ECF No. 35 at 12). The documents that

Petitioner refers to as the newly discovered evidence were mailed to Petitioner as part of the State's informal response in a state habeas proceeding on June 21, 2013. (LD 9). Therefore, Petitioner knew about the factual predicate of his claim sometime after June 21, 2013. Petitioner raised this ineffective assistance claim regarding trial counsel's alleged conflict of interest in his state habeas petition, dated September 30, 2013, that was filed in the Stanislaus County Superior Court. (LD 13). Thereafter, Petitioner filed a state habeas petition, dated January 10, 2014, in the California Supreme Court, but did not include this claim. (LD 15). Petitioner raised this ineffective assistance claim in the California Supreme Court in a subsequent petition dated May 23, 2014. (LD 19). As Petitioner knew the factual predicate of this claim at the time he filed his first habeas petition in the California Supreme Court, Petitioner has not established cause for the default. Accordingly, the Court finds that Petitioner is procedurally barred from bringing this claim. In any case, Petitioner's claim is without merit.

### b. Analysis

"The Supreme Court has held that a defendant is constitutionally entitled to a lawyer who is free of conflicts of interest and who can act as a loyal advocate . . . ." Plumlee v. Masto, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc). "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). In this context, an actual conflict of interest is "an incompatibility between the interests of two of a lawyer's clients, or between the lawyer's own private interest and those of the client." Plumlee, 512 F.3d at 1210. That is, the "client must demonstrate that his attorney made a choice between possible alternative courses of action that impermissibly favored an interest in competition with those of the client." McClure v. Thompson, 323 F.3d 1233, 1248 (9th Cir. 2003).

Here, Petitioner argues that defense counsel's proposal of twenty-nine years[14] to settle the three counts in the instant case in addition to two separate assault charges reflected a conflict of

---

[14] According to defense counsel's letter, depending on whether the second prior strike applied to only one offense or all offenses, the proposed total could be either thirty-three or fifty-eight years. (ECF No. 1 at 43).

interest and was not a tactical decision. In support of this argument, Petitioner points to the language in defense counsel's letter, which states that the proposal "serves the People's purpose by removing Mr. Estrada from the streets for a very, very long time" and counsel's failure to communicate the prosecution's nineteen-year offer. (ECF No. 1 at 27). In the Court's reading, the letter does not demonstrate that counsel favored an interest in competition with those of Petitioner. Rather, the language merely acknowledged the State's interest in resolving the case and having Petitioner incarcerated. Additionally, defense counsel's letter was dated July 31, 1995. If a nineteen-year offer was in fact made by the prosecution, it occurred on August 27, 1995. Thus, defense counsel's arguably less favorable plea offer[15] does not demonstrate that counsel "made a choice between possible alternative courses of action that impermissibly favored an interest in competition with those of" Petitioner, McClure, 323 F.3d at 1248, because the prosecution's alleged offer did not exist at the time defense counsel wrote the letter. Accordingly, Petitioner has not established that an actual conflict of interest adversely affected defense counsel's performance. Moreover, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, and Petitioner has failed to overcome that presumption.

**B. Prosecutorial Misconduct**

In his second claim for relief, Petitioner asserts that the prosecutor engaged in misconduct by representing to the court that the state's murder case was strong during the hearing on the defense's severance motion. (ECF No. 1 at 5, 11, 21–24). Respondent argues that the state court's denial of the prosecutorial misconduct claim was reasonable. (ECF No. 33 at 10). This claim was first raised in Petitioner's state habeas petition, dated September 30, 2013, which was filed in the Stanislaus County Superior Court. (LD 13). As discussed in footnote 11, *supra*, it appears the superior court denied relief on this claim without explanation. Petitioner also raised this claim in his state habeas petition, dated January 10, 2014, in the California Supreme Court, which summarily denied the petition. (LDs 15, 16). Generally, federal courts "look through"

---

[15] The Court notes that it appears the prosecution's alleged nineteen-year plea offer did not address the two assault offenses that trial counsel's proposed settlement would have resolved. Nor did the alleged offer address the second prior strike issue, which would increase the sentencing exposure.

1  summary denials and review the last reasoned state court opinion. See Brumfield, 135 S. Ct. at
2  2276; Ylst, 501 U.S. at 806. Here, however, there is no reasoned opinion, and the Court
3  presumes the claim was adjudicated on the merits. See Richter, 562 U.S. at 99. Accordingly, the
4  Court must review the state court record and "determine what arguments or theories . . . could
5  have supported, the state court's decision; and then it must ask whether it is possible fairminded
6  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior
7  decision of [the Supreme] Court." Id. at 102.

8  Although Petitioner relies on Napue v. Illinois, 360 U.S. 264 (1959),[16] the Court
9  construes the claim as asserting a due process violation of prosecutorial misconduct. See Allen v.
10 Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005) ("[T]he district court must construe *pro se* habeas
11 filings liberally."); Phillips v. Ornoski, 673 F.3d 1168, 1188 (9th Cir. 2012) (noting distinction
12 between Napue and Brady violations and separate due process violations of prosecutorial
13 misconduct). The Supreme Court "has recognized that prosecutorial misconduct may 'so infec[t]
14 the trial with unfairness as to make the resulting conviction a denial of due process.'" Greer v.
15 Miller, 483 U.S. 756, 765 (1987) (alteration in original) (quoting Donnelly v. DeChristoforo, 416
16 U.S. 637, 643 (1974)). "To constitute a due process violation, the prosecutorial misconduct must
17 be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Id.
18 (quoting United States v. Bagley, 473 U.S. 667, 676 (1985)). "[T]he touchstone of due process
19 analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the
20 culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982).

21 Petitioner alleges that the prosecution presented "false evidence" during the hearing on
22 the defense's severance motion by arguing that the murder and carjacking charges were equally
23 strong and would not cause a spillover effect. (ECF No. 1 at 21). Yet internal memoranda from
24 the prosecution note Petitioner's strong self-defense claim and recognize "a real chance" and
25 "strong possibility" of losing at trial. (Id. at 41, 46). Contrary to Petitioner's allegations,[17] during

---

[16] The Court finds that Napue, in which the Supreme Court held that the prosecution's knowing use of false testimony or evidence to obtain a conviction violates due process, is inapplicable here because a prosecutor's arguments during a motion hearing do not constitute testimony or evidence.
[17] The Court notes that Petitioner acknowledged in the petition that he did not have access to the transcript of the hearing. Petitioner's allegations are based on appellate counsel's argument set forth in Petitioner's opening brief on

1 the motion hearing, the prosecutor argued that the defense had not made the necessary showing
2 of substantial prejudice to warrant severance and did not assert that the murder and carjacking
3 charges were equally strong. (1 RT 4–5). Accordingly, the Court finds that the state court's
4 rejection of the prosecutorial misconduct claim was not contrary to, or an unreasonable
5 application of, clearly established federal law, nor was it based on an unreasonable determination
6 of fact. The decision is not "so lacking in justification that there was an error well understood
7 and comprehended in existing law beyond any possibility for fairminded disagreement." Richter,
8 562 U.S. at 103. Therefore, Petitioner is not entitled to habeas relief on his second claim.

### C. Actual Innocence

In his third claim for relief, Petitioner appears to assert an independent claim that he is actually innocent of the murder offense on the basis of self-defense. (ECF No. 1 at 6). Respondent argues that the state court's adjudication was not contrary to, or an unreasonable application of, any clearly established federal law because the Supreme Court has not clearly established any right to federal habeas relief based on a freestanding claim of actual innocence. (ECF No. 33 at 11). In the traverse, Petitioner clarifies that his claim of actual innocence is a "gateway claim" under Schlup v. Delo, 513 U.S. 298 (1995), and that "[t]he reliability of the trial, due to false evidence, is the constitutional violation," referring to the alleged prosecutorial misconduct during the severance hearing. (ECF No. 35 at 8, 10).

In Schlup, the Supreme Court held that a claim of actual innocence serves as a gateway through which a habeas petitioner may pass to have his otherwise barred constitutional claim considered on the merits. 513 U.S. at 315. However, Petitioner's constitutional due process claim regarding prosecutorial misconduct is not barred and has been considered by this Court in section IV(B), *supra*. To the extent Petitioner asserts a freestanding claim of actual innocence, he is not entitled to federal habeas relief on his third claim. See Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation

---

direct appeal that the homicide charge against Petitioner was weak and the carjacking charges were strong and inflammatory. (ECF No. 1 at 11, 21, 64).

occurring in the underlying state criminal proceeding."); McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). The self-defense defense was presented to the jury and rejected. This Court will not overturn that verdict. See Barefoot v. Estelle, 463 U.S. 880, 887 (1983) ("Federal courts are not forums in which to relitigate state trials.").

## V.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that:

1. An evidentiary hearing be held on Petitioner's first claim for relief; and
2. The remaining claims for relief in the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __August 19, 2016__             /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE