# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME I. ESTRADA, <br><br> Petitioner, <br><br> v. <br><br> MARTIN BITER, <br><br> Respondent. | Case No. 1:14-cv-00679-DAD-EPG-HC <br><br> FINDINGS AND RECOMMENDATION FOLLOWING EVIDENTIARY HEARING TO DENY PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM AND DENY PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Jaime I. Estrada is a state prisoner, represented by appointed counsel, proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his sole remaining claim in the petition for writ of habeas corpus, Petitioner asserts ineffective assistance of trial counsel for failure to convey a nineteen-year offer to plead to voluntary manslaughter and one count of carjacking.

For the reasons discussed herein, the undersigned recommends that Petitioner's claim of ineffective assistance of counsel be denied and that the petition for writ of habeas corpus be denied.

**I.**

**BACKGROUND**

On June 19, 1995, Petitioner was charged with one count of murder and two counts of carjacking in the Stanislaus County Superior Court. (1 CT[1] 112–14). At the time of these

---
[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on May 20, 2015. (ECF No. 34).

charges, Petitioner was serving his sentence for carjacking, unlawful taking of a vehicle, and evading arrest convictions out of Merced County. (Ex. PX-109; Tr. 138, ECF No. 85). While Petitioner was awaiting trial in the Stanislaus County case, he was also charged with two counts of assault. (Tr. 138–39). On August 29, 1995, Petitioner was convicted by a jury in the Stanislaus County Superior Court of second-degree murder and two counts of carjacking. The jury found true the allegations that Petitioner personally used a firearm in the commission of each offense. (1 CT 288–90).

Petitioner filed six state petitions for writ of habeas corpus, which were all denied. (LDs[2] 7–20). In the state habeas petition, dated April 28, 2013, filed in the Stanislaus County Superior Court, Petitioner raised an ineffective assistance claim with respect to his first appointed counsel's failure to advise Petitioner to accept an eight-year plea offer. (LD 7). The superior court ordered the State to file an informal response[3] to the petition. (LD 8). In its informal response, the State included internal memoranda and other documents regarding possible plea offers in addition to a declaration of Sandra Bishop, the deputy district attorney assigned to Petitioner's case, stating that the deputy district attorney who appeared at the August 17, 1995 pretrial conference "may have had discussion about settling the case for 19 years, to include a lesser included offense of voluntary manslaughter and one carjacking both with Penal Code § 12022.5 enhancements and dismissal of the second carjacking charge." (ECF No. 1 at 36; LD 9). Based on this additional evidence, in his informal reply, Petitioner requested to amend the petition to include an ineffective assistance claim with respect to trial counsel's failure to communicate the alleged nineteen-year offer. (LD 9 at 2). However, it appears that the superior court did not allow Petitioner to amend his petition to include this claim, and denied Petitioner's ineffective assistance claim regarding the eight-year offer because there was "no evidence that an 8-year offer was made to Petitioner, or that counsel's performance in this case fell below the appropriate standards." (LD 10).

---

[2] "LD" refers to the documents lodged by Respondent on September 19, 2014 and May 20, 2015. (ECF No. 34).

[3] When presented with a state habeas petition, a California court "must first determine whether the petition states a prima facie claim for relief . . . and also whether the stated claims are for any reason procedurally barred. To assist the court in determining the petition's sufficiency, the court may request an informal response from the petitioner's custodian or the real party in interest." People v. Romero, 8 Cal. 4th 728, 737 (1994).

In a subsequent state habeas petition filed in the Stanislaus County Superior Court, Petitioner raised an ineffective assistance claim with respect to trial counsel's failure to communicate the alleged nineteen-year offer. (LD 13). The superior court denied this claim in a reasoned decision. (LD 14). Petitioner also raised this claim in a state habeas petition filed in the California Supreme Court, which summarily denied the petition. (LDs 15, 16).

On April 17, 2014,[4] Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). On February 19, 2015, the Court denied Respondent's motion to dismiss the petition as untimely, finding that Petitioner received newly discovered information from the District Attorney as part of an informal response during a state habeas proceeding sometime after June 21, 2013. (ECF No. 29). On August 19, 2016, the undersigned issued findings and recommendation that recommended an evidentiary hearing be held regarding Petitioner's ineffective assistance of counsel claim and that the remaining claims be denied. (ECF No. 48). On January 17, 2017, the assigned District Judge adopted the findings and recommendation and referred the matter back to the undersigned to conduct an evidentiary hearing. (ECF No. 53).

On May 5, 2017, the undersigned held an evidentiary hearing on Petitioner's claim that he received ineffective assistance of counsel based on defense counsel's failure to convey a nineteen-year offer to plead to voluntary manslaughter and one count of carjacking. Counsel Carolyn D. Phillips appeared on behalf of Petitioner. Counsel Tami M. Krenzin appeared on behalf of Respondent. Sandra Bishop, Charles McKenna, and Petitioner testified. The parties have filed post-hearing briefs. (ECF Nos. 86–89).

## II.

## SUMMARY OF TESTIMONY

### A. Sandra Bishop's Testimony

Sandra Bishop testified that she has been a deputy district attorney with the Stanislaus County District Attorney's Office since 1988, and that she was assigned as lead counsel in Petitioner's criminal case. (Tr. 7, 10–11). The charges Petitioner faced in the Stanislaus County

---

[4] Pursuant to the mailbox rule, a *pro se* prisoner's habeas petition is filed "at the time . . . [it is] delivered . . . to the prison authorities for forwarding to the court clerk." Hernandez v. Spearman, 764 F.3d 1071, 1074 (9th Cir. 2014) (alteration in original) (internal quotation marks omitted) (quoting Houston v. Lack, 487 U.S. 266, 276 (1988).

3

case included one count of murder with a gun-use enhancement and two counts of carjacking with gun-use enhancements. (Tr. 14–15). Ms. Bishop testified that she believes Jim Brazelton was her supervisor at the time of Petitioner's criminal case, and Donald Stahl was the elected District Attorney. (Tr. 11, 13).

On January 24, 1995, Ms. Bishop prepared a memorandum advising Mr. Brazelton that she had received an offer from attorney Robert Wildman, who was initially appointed to represent Petitioner. (Ex. PX-101; Tr. 16). The memorandum stated that Petitioner was pending preliminary hearing on the Stanislaus County charges while serving a fourteen-year prison sentence for carjackings that occurred in Merced County. Mr. Wildman offered to plead Petitioner to manslaughter and two carjackings for a total term of eighteen to twenty years (including Petitioner's Merced time). The memorandum described the murder charge as "problematical from the start," and indicated that both Mark Smith and Ed McNeff[5] believed that Mr. Wildman's offer was "great" and "excellent" because the prosecution "stand[s] a real chance of losing this at trial." (Ex. PX-101).

Ms. Bishop testified that Mr. Wildman ceased representing Petitioner on April 28, 1995, and subsequently Petitioner was represented by Richard Palmer.[6] (Tr. 41). Ms. Bishop received a letter, dated July 31, 1995, from Mr. Palmer in which he made a global offer of settlement. (Ex. PX-102; Tr. 48). Mr. Palmer offered to plead Petitioner to one carjacking with gun enhancement, assault with great bodily injury enhancement, and voluntary manslaughter. Mr. Palmer calculated a sentence ranging from twenty-nine to fifty-eight years, depending on the applicability of prior strikes. Mr. Palmer wrote, "My client has incentive to accept this because he does not risk a life sentence, and it serves the People's purpose by removing Mr. Estrada from the streets for a very, very long time." (Ex. PX -102).

A memorandum, dated August 16, 1995, from Mr. Brazelton to District Attorney Stahl ("D.A. Stahl"), indicated that Ms. Bishop called Mr. Brazelton regarding settling Petitioner's case. (Tr. 49). At the time, Ms. Bishop would have needed permission from D.A. Stahl to settle a

---

[5] Mark Smith was a Stanislaus County investigator, and Ed McNeff was a Turlock police detective. (Tr. 15, 38).
[6] Mr. Palmer is deceased. (ECF No. 46 at 11; ECF No. 87 at 6 n.7).

4

murder case for voluntary manslaughter. (Tr. 51–52). Based on the handwritten notations on the memorandum, D.A. Stahl authorized settling Petitioner's case for voluntary manslaughter, but indicated that litigation was required to determine whether Petitioner's Merced conviction would qualify as a second strike for sentencing enhancement purposes. (Tr. 52–53).

A pretrial conference was held on August 17, 1995. Ms. Bishop did not appear at the hearing. (Tr. 57–58). She later learned that Charles McKenna stood in for her. (Tr. 61). It was general practice that once D.A. Stahl approved settling a homicide case, the attorney standing in for the lead attorney would receive that information. (Tr. 63). Ms. Bishop testified that in light of D.A. Stahl's permission to settle Petitioner's case, Mr. McKenna was in a position and had the authority to make a plea offer. (Tr. 73).

On cross-examination, Ms. Bishop testified that she did not recall making any plea offers in Petitioner's case, and that she was positive the prosecution never conveyed an eight-year offer to Mr. Wildman. (Tr. 81). Ms. Bishop further testified that it was the policy of the District Attorney's Office that all plea offers in murder cases had to be put on the record in court and in the presence of the defendant. This occurred regardless of whether a settlement was reached or not. (Tr. 90–92).

**B. Charles McKenna's Testimony**

Charles McKenna testified that he worked for the Stanislaus County District Attorney's Office from 1985 to 2000. (Tr. 93–94). Although Mr. McKenna could not independently recall making an appearance at Petitioner's pretrial conference on August 17, 1995, Mr. McKenna identified the handwriting on the August 17, 1995 turnaround[7] document as his. (Tr. 94–95). Mr. McKenna testified that it was general practice for the stand-in attorney to receive information on what to do at the pretrial conference (e.g., confirming trial, taking a plea). (Tr. 96–97).

///

///

---

[7] Mr. McKenna testified that a turnaround is a place for the prosecutor "to make notes or record just about anything they want on a daily basis." (Tr. 94). Ms. Bishop testified that a "turnaround" is the prosecution's housekeeping form. The prosecutors would fill out a turnaround every time they appeared in court to memorialize what occurred. They would also use the turnaround to write notes to each other with information such as offers for a case, facts, etc. (Tr. 65, 68).

| | |
|---|---|
| 1 | Mr. McKenna explained that the first line of shorthand writing on the August 17th |
| 2 | turnaround stood for: lesser included offense, count I, voluntary manslaughter, with a triad[8] of |
| 3 | three, six, or eleven years; gun enhancement with a triad. (Tr. 97). Mr. McKenna testified that he |
| 4 | would not have settled a case for voluntary manslaughter without getting permission from D.A. |
| 5 | Stahl. (Tr. 98). Mr. McKenna further explained the second line of shorthand writing on the |
| 6 | August 17th turnaround stood for: count II, carjacking with a triad; gun enhancement with a |
| 7 | triad. The third line stood for: count III, dismiss for insufficient evidence. (Tr. 99). Although the |
| 8 | written notations refer to nineteen years as the maximum possible term, Mr. McKenna testified |
| 9 | that there was an error and that the maximum possible term was nineteen years, four months. (Tr. |
| 10 | 101, 130). |
| 11 | Mr. McKenna testified that it was possible he made a plea offer consistent with the terms |
| 12 | outlined on the August 17th turnaround. (Tr. 101–02). However, his specific notations on the |
| 13 | turnaround gave him pause. For example, Mr. McKenna testified that if he had written "P-A-C- |
| 14 | F-T-R, plea as charged, free to recommend," or "plead LI192, stipulate 19 years," that would |
| 15 | mean he was making an offer. (Tr. 102). He further testified that the way he has written the |
| 16 | notes, "I'm thinking in my mind *there's an offer* and this is what the result of it will be when the |
| 17 | judge asks me, *if the person pleads to it*." (Tr. 102) (emphasis added). Mr. McKenna could not |
| 18 | recall when he wrote the comments. He testified, "Probably before the pretrial, but I really don't |
| 19 | know since I don't remember the event at all." (Tr. 99). |
| 20 | Mr. McKenna testified that the handwriting on the memorandum, dated August 17, 1995, |
| 21 | was his. (Tr. 108). It concluded that Petitioner's Merced carjacking conviction could not be used |
| 22 | as a prior strike. (Tr. 109). There is no indication whether the memorandum was drafted before |
| 23 | or after the pretrial conference, but Mr. McKenna testified that "in the normal sequence of events |
| 24 | this is something I would create after[]" the pretrial conference. (Tr. 108–10). |
| 25 | The minutes from the April 17, 1995 pretrial conference[9] noted that there was no |
| 26 | disposition and the matter was confirmed for trial. (PX-106; Tr. 116). The minutes also noted an |

---

[8] Ms. Bishop testified that almost every determine term under California law has an option of three sentences—a "triad" consisting of mitigated, mid-term, and aggravated sentences. (Tr. 54).
[9] No transcript of the pretrial conference exists because it was never made part of the record on appeal. (Tr. 78–79).

1  indicated disposition[10] of "plea ct I, II and dism ct III." (PX-106). Mr. McKenna testified that he
2  interpreted the minutes to mean that a plea offer was made because the court clerk would not
3  have written the indicated disposition, which included dismissal of count III, on his or her own.
4  (Tr. 116).

Mr. McKenna testified that it was possible that the final offer, as memorialized by the court minutes, may have been to plead to murder and carjacking and dismissal of the third count. (Tr. 118). However, Mr. McKenna also testified, "I mean I can't imagine I said one thing to Mr. Palmer and then got in front of the court and said something else, said you know, voluntary manslaughter to Mr. Palmer; got in front of the court, with the court hearing me, murder. That doesn't make sense to me." (Tr. 117).

On cross-examination, Mr. McKenna testified that it was his practice to convey plea offers in open court. (Tr. 120). Judge Girolami[11] presided over Petitioner's pretrial conference. (Ex. PX-105). Mr. McKenna testified that it was Judge Girolami's practice to inquire about plea offers at the pretrial conference.[12] (Tr. 121). Mr. McKenna testified that he suspects that he himself did not extend a nineteen-year offer to Mr. Palmer. (Tr. 131–32). Based on the documents, Mr. McKenna testified, "I'm looking at the way this is written up, not as an offer so much as—I think there may be an offer and there may be a plea. I think there may be a plea to this offer isn't the same as I made the offer or I'm obligated to make the offer." (Tr. 133).

### C. Petitioner's Testimony

Petitioner testified that he is currently serving an indeterminate life term for a conviction in Stanislaus County for a 1995 murder. Petitioner was also charged with two carjackings and each count included gun-use enhancements. (Tr. 138). At the time of the Stanislaus County charges, Petitioner was serving time for Merced County convictions. Additionally, while

///

---

[10] Ms. Bishop testified that "[a]n indicated disposition means what a plea might be to." (Tr. 85). This could be a plea offer, but sometimes it could mean that the judge indicated what sentence he or she would impose. The judge would not be able to change the charges, but could offer less time that what the prosecution was seeking. (Tr. 85–86).

[11] The Court notes that Judge Girolami's name is spelled "Jerolome" in the transcript as it was spelled phonetically. (Tr. 71).

[12] Ms. Bishop also testified that it was Judge Girolami's practice to inquire about plea offers on the record. (Tr. 82–83).

Petitioner was awaiting trial on the Stanislaus County charges, he was also charged with two counts of assault. (Tr. 138–39).

Petitioner testified that of all the charges he was facing at the time, he was most troubled by the murder charge because that carried a potential term of life imprisonment. Petitioner believed he was advised of the possible life term by his first attorney, Mr. Wildman. (Tr. 139). Petitioner conferred with Mr. Wildman about his self-defense claim, and Mr. Wildman told him that it was a winning case. Mr. Wildman withdrew from representation due to a conflict. (Tr. 140).

Mr. Palmer was Petitioner's third appointed attorney. (Tr. 140). Petitioner discussed his self-defense claim with Mr. Palmer, who was unsure of the claim due to concerns regarding witnesses. Petitioner began to doubt Mr. Palmer's representation and at the time was not aware of any plea offers Mr. Palmer made on Petitioner's behalf. (Tr. 141). Petitioner testified that Mr. Palmer's statement in the July 31, 1995 offer letter that Petitioner has incentive to accept a plea offer for a sentence between twenty-nine to fifty-eight years was true. Petitioner testified that he discussed with Mr. Palmer his eagerness not to have a life sentence hanging over his head. Petitioner thinks he would have taken a twenty-nine year offer. (Tr. 142).

Petitioner testified that he was never advised of a determinate sentence offer from the prosecution and that he would have accepted a voluntary manslaughter offer with a nineteen-year term. (Tr. 144). Petitioner would have accepted such an offer because he did not want to be exposed to an indeterminate life term. (Tr. 144–45).

On cross-examination, Petitioner testified that Mr. Wildman had conveyed to him an eight-year plea offer, but told Petitioner to reject the offer because he had a winning case. (Tr. 145). Petitioner also testified that he informed Mr. Palmer that he was willing to settle for anything that was not a life term. (Tr. 149). Although Petitioner remembered appearing at the August 17, 1995 pretrial conference, he did not have any independent recollection of a plea offer made that day or what occurred in court. (Tr. 148, 150). Petitioner did not recall any discussions with his attorney on August 17, 1995, but he testified that if Mr. Palmer had conveyed a nineteen-year offer, Petitioner would have remembered it. (Tr. 150–51).

8

# III.

# STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). "[I]t is the petitioner's burden to prove his custody is in violation of the Constitution, laws or treaties of the United States. This burden of proof must be carried by a preponderance of the evidence." Silva v. Woodford, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted). See also Ben-Sholom v. Ayers, 674 F.3d 1095, 1099 (9th Cir. 2012).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. When a state court's adjudication of a claim is based on an antecedent unreasonable application of federal law or unreasonable determination of fact, AEDPA deference no longer applies and the Court reviews the claim *de novo*. See Panetti v. Quarterman, 551 U.S. 930, 953 (2007); Liao v. Junious, 817 F.3d 678, 688 (9th Cir. 2016).

Here, the Court previously found that AEDPA deference does not apply because the state court's adjudication of Petitioner's ineffective assistance of counsel claim was based on an unreasonable determination of fact. (ECF No. 48 at 10–11). This determination was adopted by

the District Judge. (ECF No. 53). Accordingly, the Court reviews Petitioner's ineffective assistance of counsel claim *de novo*.

## IV.

## DISCUSSION

The critical question at issue at the evidentiary hearing was whether the government extended a plea offer to Petitioner's counsel outside the presence of Petitioner, which Petitioner would have accepted. In his sole remaining claim for relief, Petitioner asserts that counsel was ineffective for failing to communicate a nineteen-year offer to plead to voluntary manslaughter and one count of carjacking. (ECF No. 1 at 5, 10–11, 17–20). Petitioner contends that it is reasonable to conclude that the pretrial conference minute order memorialized an offer to plead to murder, not voluntary manslaughter. Petitioner argues that the record establishes a voluntary manslaughter plea was offered to defense counsel prior to trial, either leading up to the pretrial conference or even after the pretrial conference. (ECF No. 89 at 4). Petitioner asserts that the record establishes by a preponderance of the evidence that defense counsel received a voluntary manslaughter offer that he did not communicate to Petitioner, who was "extremely motivated to avoid the potential life term" and was "ready, willing, and able to accept a plea to voluntary manslaughter." (Id. at 5–6).

Respondent asserts that given the passage of over two decades since the events at issue, there is insufficient evidence to support Petitioner's ineffective assistance of counsel claim. (ECF No. 87 at 1). Respondent argues that the evidence does not support Petitioner's two-deal theory that an offer to plead to murder was made at the pretrial conference and a manslaughter offer was made outside the presence of the court and never communicated to Petitioner. Respondent contends that the logical conclusion in light of the record is that the prosecution extended one offer at the pretrial conference in the presence of Petitioner. That offer was most likely for manslaughter, but regardless, Petitioner rejected said offer. (ECF No. 87 at 2).

### A. **Strickland** Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that (1)

10

"counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within the "wide range" of reasonable professional assistance. Id. at 687. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

The Supreme Court has applied the Strickland analysis to ineffective assistance claims arising from the plea process. See Missouri v. Frye, 566 U.S. 133, 140 (2012); Hill v. Lockhart, 474 U.S. 52, 57 (1985). The Supreme Court has held that "as a general rule, defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and failure to do so constitutes deficient performance. Frye, 566 U.S. at 145. To establish prejudice, a petitioner must demonstrate a reasonable probability that he would have accepted the plea offer and that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. Id. at 147. That is, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Id.

**B. Analysis**

Ultimately, the undersigned finds that Petitioner has not met his burden of establishing by a preponderance of the evidence that: a nineteen-year offer to plead to voluntary manslaughter and one carjacking was made to defense counsel, said offer was made outside of Petitioner's

presence or was not otherwise conveyed to Petitioner, and that Petitioner would have accepted said offer.

The record establishes that the prosecution seriously considered and received approval to make an offer for Petitioner to plead to the lesser-included offense of voluntary manslaughter. (Ex. PX-103; Tr. 52, 98–99). Internal memoranda establish that the prosecution had concerns about Petitioner's self-defense claim and believed that a plea to voluntary manslaughter would be a good outcome. (Ex. PX-101, PX-103). However, there were outstanding questions leading up to the pretrial conference regarding the effect of Petitioner's prior Merced convictions, as well as how to deal with Petitioner's assault charges.

The critical date in question is August 17, 1995, the day of the pretrial conference. The only witnesses to the pretrial conference who testified at the evidentiary hearing were Petitioner and Mr. McKenna. Both testified that they did not personally recall the pretrial conference, including what, if any, plea offers were extended at this conference. Given the passage of time, this is possible. However, Petitioner's lack of any memory, in light of the reference to a plea offer being made in court as discussed below, is more suspect. The Court would expect Petitioner to have some memory of a plea offer he rejected in court in a case that he later lost at trial. His inability to remember any details of such an offer suggests that what he does remember does not help his case. Rather than testify regarding any specific memory of the conference, both Petitioner and Mr. McKenna offered hypotheses regarding what likely happened based on the documents in the record and speculation regarding what they likely would have done in certain circumstances.

A turnaround document, dated August 17, 1995, contained Mr. McKenna's handwritten notations that were consistent with the terms set forth in Mr. Brazelton's August 16, 1995 settlement memorandum, which D.A. Stahl had approved. Specifically, the turnaround contained triads for voluntary manslaughter, carjacking, and gun-use enhancements, and indicated dismissal of count III for insufficient evidence. (Ex. PX-104). A memorandum, dated August 17, 1995, written by Mr. McKenna opined that Petitioner's Merced carjacking conviction would not count as a prior strike—an issue that D.A. Stahl explicitly noted would have to be litigated.

However, there are no clear indications that a plea offer was made or accepted in these documents. Mr. McKenna testified that he suspects that he himself did not extend a nineteen-year offer to Mr. Palmer. (Tr. 131–32). Rather, based on the documents, Mr. McKenna testified, "I'm looking at the way this is written up, not as an offer so much as—I think there may be an offer and there may be a plea. I think there may be a plea to this offer isn't the same as I made the offer or I'm obligated to make the offer." (Tr. 133).

The most critical document is the superior court's minutes of the pretrial conference. The minutes specified that the following indicated disposition was put on the record: "plea ct I, II and dism ct III." (Ex. PX-105). Petitioner contends that count I refers to murder and cannot refer to a voluntary manslaughter offer. Respondent claims that this could have included a voluntary manslaughter plea because voluntary manslaughter is a lesser-included offense of murder. Mr. McKenna's notes also reflect voluntary manslaughter as a lesser-included offense. It is also clear that whatever offer was made at the pretrial conference, Petitioner was present. This was the practice of the court, Petitioner remembered attending such a conference, and his attendance was noted in the minutes. Thus, it appears that some offer was made at the pretrial conference in the presence of Petitioner and was rejected. It is not clear what exactly the offer was.

The next question is whether some different offer was extended to Petitioner's counsel outside the presence of Petitioner. Petitioner must establish that some different offer was extended and not communicated to him, that he would have accepted such offer, and that such offer would have resulted in a more favorable result, in order to prevail. The Court finds that Petitioner has not met his burden to establish this by preponderance of the evidence. Mr. McKenna's practice was to memorialize plea offers in open court. There was no testimony or other evidence that Mr. McKenna would extend a lower plea immediately before the pretrial conference and then memorialize a higher plea at the conference.

Ms. Bishop also testified that the prosecution's practice was to put formal offers on the record. Thus, any offer extended would have been confirmed on the record pursuant to the prosecution's routine practice. During a discussion regarding jury instructions at trial, the judge briefly referenced the parties discussing voluntary manslaughter earlier in the case. (2 RT 347).

Petitioner's reliance on the trial judge's brief reference to establish that a voluntary manslaughter offer was made after the pretrial conference (but prior to trial) is unpersuasive. There was no testimony or other evidence that would establish such an offer was extended after the pretrial conference. Moreover, the trial judge's brief mention of voluntary manslaughter discussions likewise could have been a reference to a voluntary manslaughter offer at the pretrial conference.

Petitioner's testimony was not elucidating. Petitioner testified that he did not remember what occurred at the pretrial conference, but based on the minutes believes that a plea offer for murder (not voluntary manslaughter) was made and rejected. This was speculation. Petitioner testified that he received and rejected an eight-year offer at some point in time. He also testified that he believed his self-defense claim was strong, although he began to doubt Mr. Palmer's representation and the whole process. Petitioner denied knowledge of any invitations for an offer of fifty-eight years. Petitioner's testimony that he would have accepted any determinate sentence appeared self-serving and unconvincing. In light of the record, Petitioner has not met his burden of showing by a preponderance of the evidence that a nineteen-year offer to plead to voluntary manslaughter and one count of carjacking was extended but not communicated to him and that he would have accepted such an offer.

Given the Court's conclusion that Petitioner has not shown that a plea offer was extended to defense counsel outside of his presence, the Court need not go further in deciding what exactly did happen in court that day, but it is worth noting what events seem most likely. It appears the most likely scenario was that an offer was extended on the record that included a voluntary manslaughter plea, because that offer was authorized by D.A. Stahl and it was the prosecution's routine practice to put plea offers on the record. Petitioner turned it down, and that was the only offer made. This does not mean the Court doubts Petitioner when he says he never remembered a plea for nineteen years. The testimony suggests that the plea offer was likely not so straightforward. There were considerations about prior strikes and other offenses, and the calculations were complicated and subject to debate. It appears most likely to this Court that whatever offer was made came in a form that included voluntary manslaughter, but did not guarantee a global settlement of nineteen years in light of the existing Merced sentence,

uncertainty regarding whether the Merced carjacking constituted a strike, and Petitioner's pending assault charges. The Court is sympathetic to Petitioner's subjective belief that he did not hear such an offer, but that is not the proper inquiry.

Petitioner has not met his burden on the pertinent issues—that a nineteen-year offer to plead to voluntary manslaughter and one count of carjacking was made outside Petitioner's presence or otherwise was not communicated to him, and that Petitioner would have accepted said offer. As Petitioner has not established ineffective assistance of counsel for failure to communicate a plea offer, the Court finds that he is not entitled to habeas relief on his first claim.

## V.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that Petitioner's ineffective assistance of counsel claim be DENIED and that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).

\\\
\\\
\\\
\\\
\\\
\\\

15

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 15, 2017**

/s/ *Erin P. Grosjean*

UNITED STATES MAGISTRATE JUDGE